IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ORIGINAL JOE'S INC.,

    Plaintiff,

v.

PINSONNEAULT HOLDINGS, LLC et al.

    Defendants.

No. CV 09-05203 CRB

**ORDER DENYING TEMPORARY RESTRAINING ORDER**

Plaintiff Original Joe's Inc. ("OJI") seeks a temporary restraining order to enjoin Defendants Pinsonneault Holdings and Majestic LLC ("Uptown Joe's") from operating their restaurant at the Hotel Majestic under the name "Uptown Joe's." MPI at 1. OJI also seeks an order to show cause why a preliminary injunction should not be issued. The Court held a hearing on Plaintiff's motion on November 23, 2009, at the conclusion of which it held that it would DENY the motion.

<u>Legal Standard</u>

As with a preliminary injunction, a temporary restraining order is appropriate when a plaintiff demonstrates either: (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor. <u>See</u> Lands Council v. Martin, 479 F.3d 636, 639 (9th Cir. 2007). These two formulations are not different tests, but merely extremes on a single continuum: "the less certain the district court is of the likelihood of

success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor." Sw. Voter Registration Educ. Project v. Shelley, 344 F.3d 914, 918 (9th Cir. 2003) (en banc) (per curiam).

## Discussion

I. Likelihood of Success

Success on the merits for a trademark infringement claim requires (1) a valid trademark and (2) likelihood of confusion. See Brookfield Communications, Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1046 (9th Cir. 1999). Because OJI has a valid trademark, see MPI at 4, Toke Decl. Ex. 2, the Court's focus is the likelihood of confusion.

Courts analyzing likelihood of confusion look at eight factors: (1) the strength of the mark; (2) similarity of the marks; (3) proximity of the goods/services sold; (4) similarity in the marketing channels used; (5) the type of goods/services and the degree of care likely to be exercised by purchasers; (6) evidence of actual confusion; (7) defendant's intent in selecting its mark; and (8) likelihood of expansion into other markets. See AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348 (9th Cir. 1979).

The first Sleekcraft factor, strength of the mark, is determined with a two part test. The first part is conceptual strength. See J. Thomas McCarthy, McCarthy on Trademarks at 11:83. "Original Joe's" has conceptual strength because it is arbitrary– it makes no suggestion of what service it provides. The second part is commercial strength, or the marketplace recognition value of the mark. Id. OJI argues that its mark also has commercial strength, because it has been in use since 1937 and OJI is a famous San Francisco restaurant. MPI at 13-14.

"A mark can be conceptually strong (by being arbitrary or fanciful) and at the same time be commercially weak if the mark lacks significance in the marketplace for identifying the origin of the goods." Id. (internal quotations and citation omitted). While there is no dispute that Original Joe's has a loyal following (in the Court's opinion, deservedly so), the word "Joe's" is not particularly significant or unique in the marketplace. A search on the website Yelp of restaurants in San Francisco that contain the word "Joe's" reveals Joe's

Coffee Shop, Joe's Café, Little Joe's Pizzeria, Big Joe's Broiler, Joe Joe's BBQ Café, Joe's 24th Street Café, Joe's Cable Car, Little Joe's, and Joe's Excellent Chinese Cuisine. As the Court noted at the hearing, there is also Marin Joe's, San Rafael Joe's, and Westlake Joe's (all Italian comfort food restaurants) outside of the City.[1] And there is another Original Joe's operating in San Jose. See Streetwise Maps, Inc. v. VanDam, Inc., 159 F.3d 739, 744 (2d Cir. 1998) (noting the extensive use of the words "street" and "wise" in other products and finding that such third party use weakened the strength of Streetwise's mark). Accordingly, while Original Joe's has some strength conceptually, it is not very strong in the marketplace.

Moreover, under the second Sleekcraft factor, the Original Joe's and Uptown Joe's marks are not terribly similar. OJI argues that the dominant part of the "Original Joe's" mark is the word "Joe's," and that "Uptown" is a geographical term, suggesting an uptown branch of Original Joe's. But if "Joe's" is the dominant part of the "Original Joe's" mark, it is not very dominant, as exemplified by all of the Joe's restaurants listed above. Also, while "Uptown" is a geographic term, so are "Marin," "San Rafael," and "24th St." At the hearing, Defendants noted additional differences between the two restaurants, among them the fonts used in the two logos and menus, the decor of the two restaurants, and the absence at Uptown Joe's of exhibition cooking, tuxedo-clad waiters, and a counter– all prominent features of OJI. This factor, too, does not favor OJI.

The third, fourth and fifth Sleekcraft factors probably do favor OJI. Both OJI and Uptown Joe's are Italian "comfort food" restaurants, in the San Francisco Bay Area, at similar price points. Though Defendants noted at the hearing that Uptown Joe's has used emails, newspaper advertisements, and doorknob flyers to advertise its restaurant[2]– techniques OJI has apparently not employed– the two restaurants would likely use some

---

[1] Plaintiff argued at the hearing that these last three operate with a license from Original Joe's, have been in business for several decades, and have agreed not to expand into the City. Plaintiff further argued that these other Joe's inure to the benefit of Original Joe's, because when one thinks of them, they then think of Original Joe's. That assertion is probably subject to debate, but in any case does not explain away the presence of the other (unrelated) Joe's restaurants throughout the area.

[2] Defendants also noted that these materials all include the notation: "not affiliated with any other Joe's."

3

1  similar marketing channels, if and when OJI reopened and resumed marketing.[3]  Weighing
2  against OJI, though the degree of care exercised by restaurant patrons is not likely to be as
3  high as purchasers of other types of goods, like luxury cars, San Francisco is a food-obsessed
4  city, within which OJI's customers are a particularly loyal subset.  See Marie Duggan Decl.
5  at 2-3.  Such customers might be more inclined than average casual diners to verify whether
6  Uptown Joe's is in fact affiliated with Original Joe's before dining there based on that
7  assumption.

8  The sixth Sleekcraft factor, evidence of actual confusion, favors Uptown Joe's.  OJI
9  points to one ambiguous, and anonymous, user comment on Yelp ("Please reopen the
10 original location! I see that they are opening "Uptown" Joe's in the Hotel Majestic. I sure
11 hope this isn't going to replace the original") and an erroneous paragraph on a local blog
12 ("another branch of Original Joe's fighting to reopen in the very swank confines of the Hotel
13 Majestic").  MPI at 17, Lammers Decl. at 4, 15.  This does not convince the Court that many
14 people are, or are likely to become, confused.

15 The seventh Sleekcraft factor, the defendant's intent, is somewhat mixed, based on the
16 evidence before the Court.  "[W]here . . . it plainly appears that there is a purpose to reap
17 where one has not sown, to gather where one has not planted, to build upon the work and
18 reputation of another, the use of the advertising or trade name or distinguishing mark of
19 another, is in its mature, fraudulent and will be enjoined."  Stork Restaurant v. Sahati, 166
20 F.2d 348, 357 (9th Cir. 1948) (internal quotation and citation omitted).  The Court does not
21 give much weight to the statements by John Harris; even accepting Plaintiff's version of
22 those statements, they were made in an effort to interest OJI in the Hotel Majestic space and
23 so understandably referenced an interest in OJI's customer base, etc.  While the two
24 restaurants contain very similar menu items,[4] many Italian comfort food restaurants contain
25 similar menu items, and Plaintiff neither claimed nor established a proprietary interest in any
26 of the items on the Uptown Joe's menu.  Indeed, Defendants argued at the hearing without

---

[3] OJI has been closed for two years due to a fire.  See John Duggan Decl. at 1-2.

[4] The menus themselves are very different aesthetically.  See Lammers Decl. Ex. 6.

4

1  contradiction that the "Joe's special," found on both menus, actually originated at New Joe's,
2  the progenitor of Original Joe's. In addition, while Uptown Joe's has hired several chefs
3  from OJI, that they do not advertise that fact (or display the chefs, who work in a closed
4  kitchen) detracts from any inference of ill intent. Defendants also asserted at the hearing that
5  Uptown Joe's intentionally did not hire former OJI waiters, as they were the public face of
6  OJI. In light of these mixed facts, it does not "plainly appear[]" that Uptown Joe's intended
7  to infringe on OJI's mark.

8  The eighth and final <u>Sleekcraft</u> factor, likelihood of expansion into other markets, is
9  not very significant in this case, as the goods or services already compete– or will, if and
10 when OJI reopens. See <u>Sports Authority, Inc. v. Prime Hospitality Corp.</u>, 89 F.3d 955, 963
11 (2d Cir. 1996).

12 In sum, though there is some mixed evidence of Uptown Joe's intent, the OJI mark is
13 commercially not very strong, the two marks are not very similar, and there is little evidence
14 of actual confusion in the marketplace. Therefore, OJI has not demonstrated a likelihood of
15 confusion and is unlikely to succeed on the merits.

16 II.    <u>Irreparable Harm</u>

17 OJI argues that costumers' confusion between the two restaurants, and OJI's lack of
18 control over the quality of the Uptown Joe's venture, threatens to harm the 70-plus years of
19 good will it has established in San Francisco. MPI at 20. If the Court had found that this
20 harm was likely, such harm would likely be irreparable. See <u>Paul Frank Indus., Inc. v.
21 Sunich</u>, 502 F. Supp. 2d 1094, 1102 (C.D. Cal. 2007) ("Infringing activity may lead to a loss
22 of control over [plaintiff's] reputation and/or dilution of the goodwill that [plaintiff] has built
23 up over the years. Such damage is difficult, if not impossible to measure or undo").
24 However, the Court finds that OJI does not face irreparable harm. In addition, unless and
25 until OJI reopens, it arguably faces no harm at all.

26 III.   <u>Balance of Equities/Public Interest</u>

27 The public interest does not weigh decisively for either party: the public has an
28 interest both in not being confused and in the free market. However, the balance of equities

5

tips in Uptown Joe's favor. According to Defendants, Uptown Joe's has invested over $60,000 in publicizing its name. Forcing Uptown Joe's to change its name would be a considerable expense. If that cost was prohibitive, the individuals who have been hired to work at Uptown Joe's would face the possibility of losing their jobs. Though OJI has every right to defend its mark, closed or not, the Court is simply not convinced that equity demands an injunction on OJI's behalf.

## Conclusion

Because OJI is unlikely to succeed on the merits, the Court DENIES the motion for a temporary restraining order. Further, the Court will not issue an order to show cause why a preliminary injunction should not be issued. Should the Court receive a motion for preliminary injunction, it will advance the trial on the merits and consolidate it with the hearing, pursuant to Fed. R. Civ. P. 65(a)(2).

**IT IS SO ORDERED.**

Dated: Nov. 24, 2009

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE